# FARROW

*v.*

# THE ECLIPSE BICYCLE COMPANY.

RES JUDICATA; EQUITY PLEADING AND PRACTICE; APPELLATE PRACTICE; INTERLOCUTORY APPEALS; AMENDMENT OF ANSWER; OPINION OF COURT, CONSTRUCTION OF.

1. The adjudication of this court upon an interlocutory appeal from a decree for an accounting in favor of the complainant, is so far conclusive and binding upon the lower court as to preclude the granting by that court thereafter of leave to the defendant to amend its answer and to reopen the cause by taking additional testimony in support thereof; but upon a special application made for that purpose, leave may be granted by this court, under such circumstances, to so file an amended answer and reopen the case.

2. The showing made in support of an application or suggestion that this court, after its affirmance of an interlocutory decree in favor of the complainant for an accounting, permit the defendant to file an amended answer to the bill of complaint and take additional testimony in support thereof, upon the grounds that the complainant fraudulently concealed the existence of a certain patent from the defendant, his assignee of an application for a patent, and that the defendant was under a misapprehension as to the nature of the suit and complainant's claim, *held* insufficient to call for such action by this court.

3. In construing an opinion of the court, the expressions contained therein are to be construed with reference to the subject-matter under consideration.

No. 1034.   Submitted March 7, 1901.   Decided April 2, 1901.

HEARING on an appeal by the complainant (specially allowed) from an interlocutory order of the Supreme Court of the District of Columbia granting leave to a defendant in an equity suit to amend its answer and take additional testimony in support thereof, after a former interlocutory decree in favor of the complainant for an accounting had been affirmed by this court and the cause remanded for the taking of the account decreed.                                          *Reversed.*

The COURT in its opinion stated the case as follows:

This cause was formerly before us on a special appeal allowed to the defendant in the court below, the present appellee, the Eclipse Bicycle Company, from a decree of the Supreme Court of the District of Columbia, by which it had been adjudged that the complainant in the cause, the present appellant, was entitled to an accounting from the defendant for royalties on certain patented devices manufactured by it, and by which also the cause was referred, to the auditor of the court for the statement of such account, a decree which this court affirmed. *The Eclipse Bicycle Company* v. *Farrow,* 16 App. D. C. 468. After the cause had been remanded, and when it was before the auditor for the accounting which had been decreed, the defendant company filed a motion, through new counsel, for leave to amend its answer, and to reopen the cause by taking additional testimony in support of its answer; and in aid of this motion it filed several affidavits, with numerous exhibits attached. The general purport of the motion and the affidavits was that there had been fraudulent concealment on the part of the complainant, and that the defendant, during the whole course of the litigation, had been under a misapprehension as to the nature of the complainant's claim against it. An answer to the motion, likewise supported by affidavit, was filed by the complainant. The court allowed the motion and entered an order granting leave, as prayed, to amend the answer, and to take further testimony.

From this order the complainant has prayed and has been allowed a special appeal to this court.

[The further material facts will be found stated in the opinion — REPORTER.]

*Mr. Henry M. Earle* and *Mr. J. C. Gittings* for the appellant:

1. The decree is that of the Court of Appeals, and having been affirmed upon appeal, the subject thereof becomes *res ad-*

*judicata. Southard et al.* v. *Russell,* 16 How. 547–570; *Kimberley* v. *Arms,* 40 Fed. Rep. 548; *Baker* v. *Humphrey,* 103 U. S. 736; *Stewart* v. *Salmon,* 97 U. S. 361. The decree in the case at bar adjudicated the merits, and is, therefore, final. This court is vested with jurisdiction of interlocutory appeals, and a decision, therefore, makes such decree that of the appellate court, equally with any decision from appeal of a final decree. See *Gilbert* v. *The Washington Beneficial Endowment Association,* 15 App. D. C. 40.

2. Permission must be given by the appellate court to allow review of its decree upon grounds of newly-discovered evidence. *Savings Bank* v. *Taylor,* 53 Fed. Rep. 854.

3. If it be admitted for the purposes of illustration that it be permissible for the lower court to suspend the operation of a decree of this court, and grant leave to reopen the merits of the case, nevertheless the grounds set forth in the appellee's moving papers are insufficient and improbable. The greatest negligence is shown to have existed on the part of the appellee, and evidence of their disingenuousness is apparent throughout.

4. The discretionary power of a court of equity to allow amendment of pleadings, is elaborately treated by Story, J., in case of *Smith* v. *Babcock,* 3 Sumner, 586. In that case amendment was allowed. The circumstances differed materially from the case at bar, the amendment desired being the substitution of an exhibit in lieu of one that had been erroneously attached to the answer. The amendment was permitted with great reluctancy, it being stated by the court, that "before an answer should be allowed to be amended it should be proved that the reasons are cogent and satisfactory." See, also, *Calloway* v. *Dodson,* 1 Brockenborough, 122.

5. The decree is that of this court; it adjudicates the merits of this case; it contains a reference to the auditor to state an account, and it is suspended by an order of an inferior court. This court allowed an appeal from the decree of the lower court, which they would not have done, had not the cause been finally disposed of by the lower court, for otherwise the jurisdiction would have been divided, and a part re-

mained in the trial court while another part was transferred to the appellate tribunal. Therefore, the decree of this court was final, the appeal was not interlocutory. The fact that further orders of the court are necessary to carry into effect the decree, does not make it any the less final in its nature. *Stovall* v. *Banks,* 10 Wall. 585; *RR. Co.* v. *Bradley,* 7 Wall. 577; *Thompson* v. *Dean,* 7 Wall. 342.

6 Assuming that the decree was an interlocutory decree, the lower court, under its rules, was powerless to set it aside, as more than two terms have passed since the term in which same was rendered. The order granting the motion to amend the answer and introduce testimony after a final decree by this court, was unauthorized, and should be reversed. Section 954 of the Revised Statutes of the United States, relating to amendments of pleadings, does not contemplate applications for leave to amend subsequent to a final decree of an appellate court, as clearly appears from general equity rule 60, of the Supreme Court of the United States.

*Mr. A. S. Worthington, Mr. D. S. Mackall* and *Mr. H. L. Osgood* for the appellee:

1. The decree of January 31, 1900, in the court below, affirmed by this court on special appeal, was interlocutory, not final. That the decree in question was interlocutory only seems to be so well settled by the Supreme Court of the United States that we deem it necessary only to refer to a few of the cases in that court. *Fourniquet* v. *Perkins,* 16 How. 82; *Iowa* v. *Illinois,* 151 U. S. 238; *Keystone, etc., Company* v. *Martin,* 132 U. S. 91; *Lodge* v. *Twell,* 135 U. S. 232; *Mc-Gourkey* v. *Toledo & Ohio Railway Co.,* 146 U. S. 537–544.

2. And as that decree was not a final one, the court below had full power after it was entered to allow amendments of the pleadings and the reopening of the evidence. R. S. U. S., Sec. 954; Equity Rule 55, Supreme Court of the District of Columbia; *Neale* v. *Neale,* 9 Wall. 1; *Estho* v. *Lear,* 7 Pet. 130; *Garland* v. *Davis,* 4 How. 131; *Hardin* v. *Boyd,* 113 U. S. 756–768; *Richmond* v. *Irons,* 121 U. S. 47; *Brown* v. *Bos-*

*worth,* 62 Wis. 542. Even where the case has been taken to the appellate court to review the final action of the court below and the judgment or decree below has been reversed, if the mandate simply sends the case back for further proceedings, the power of the court below to allow amendments is not necessarily at an end. *Hodgson* v. *Marine Fire Ins. Co.,* 6 Cranch, 206.

3. The failure of the complainant's counsel to raise the question of jurisdiction in the court below is fatal to their claim that before filing their application for leave to amend in the court below the defendant should have applied to this court for an order permitting such an application to be filed. This court has very ample authority by its rules to regulate proceedings in the court below in all matters relating to appeals. It has not as yet promulgated any rule relating to proceedings in the court below after an appeal to this court from an *interlocutory* order or decree. It would seem that until by such a rule it restrains the power of the court below, that power remains unimpaired in a situation such as existed when the defendant's counsel deemed it necessary to apply to the court below for leave to amend the pleadings in this case. The cases relied upon by opposing counsel are all cases in which the appeal was from a final decree. There being thus neither rule nor precedent to apply to the case, it was in the highest degree incumbent upon counsel for the complainant, if they questioned the power of the court below in the premises, to have made the objection at the earliest possible moment. But, instead of doing so, they did not make the objection in the court below at all, but proceeded to file an answer, supported by affidavits, assailing the application on its merits, and on its merits alone. In *Reynes* v. *Dumont,* 130 U. S. 354–395, and in *Brown* v. *Iron Company,* 134 U. S. 530, the Supreme Court held that the objection of want of jurisdiction of the subject-matter in a court of equity cannot be first raised in the appellate court if the case falls within any general class of cases in which a court of equity might have jurisdiction under any circumstances. We doubt whether the objection which is made here, assuming it to be well founded, can properly be

considered as raising a question of jurisdiction at all. It seems to us to involve rather an irregularity of procedure, and to fall within the general rule that he who wishes to object to a mere irregularity must make the objection before he takes any further step in the case. *Roach* v. *Hulings,* 16 Pet. 321. See, also, *Russell* v. *Southard,* 12 How. 139; *Southard* v. *Russell,* 16 How. 547; *Potts' Case,* 166 U. S. 263; *Watson* v. *Stevens,* 53 Fed. Rep. 31; *Marquand's Case,* 57 Fed. Rep. 189; *Montana Ore Purchasing Co.* v. *Boston, etc., Mining Co.,* 85 Fed. Rep. 867; *Railroad Co.* v. *Nichols,* 85 Fed. Rep. 869; *Woodward* v. *Boston Casting Machine Co.,* 63 Fed. Rep. 609.

4. On the merits, the order appealed from was properly made. We need not cite authorities on the point that there is a strong presumption in favor of an order made by any court in the exercise of a discretionary power. This presumption applies especially to orders which merely tend to allow the parties to fully present their case to the court. In this case the presumption receives additional force from the fact that the order reopening the case was made by the same judge who had heard the case argued and reargued and had decided it against the party making the application. A clearer case of the conduct of a suit under a mistake as to the question involved, as finally indicated by the decision of the appellate court, can hardly be imagined. And even if this had resulted, through the inadvertence of defendant's counsel alone, it would be against all the rules which govern courts in modern times to allow the client to be so severely punished for that reason. It is every-day practice in a court of law, after a case has been fully prepared and tried and is ready to be submitted to the jury, to have one party or the other allowed to withdraw a juror and amend his declaration or his plea because of some defect of which, in strictness, counsel should have taken notice before issue was joined; and in the court of chancery it often happens that after a case has been submitted to the court on final hearing the chancellor suggests an amendment to the pleadings in order that justice may be done. See, on this general subject, two remarkable cases in which amendments were

allowed under circumstances much stronger against the applicant than anything that is urged here. *Drew* v. *Beard,* 107 Mass. 64; *Welch* v. *Arnett,* 46 N. J. Eq. 548.

5. One of the important questions of fact in the case was whether or not the defendant company had knowledge of the existence of the Stover and Hance patent at the time it entered into the contract with Farrow, and the evidence, in the form of letters, now sought to be introduced, render it almost certain that it did not have such knowledge; and, moreover, that the first knowledge it acquired on the subject was derived from Farrow himself long after the making of the contract in question. See *Muloch* v. *Muloch,* 26 N. J. Eq. 15, where it is held that the rule with respect to merely cumulative evidence is subject to the exception that where such evidence will make plain and certain that which before was mysterious and doubtful it will be received.

6. It is said that practical difficulties have arisen in carrying out the provision of law which authorizes this court to allow a special appeal from any interlocutory order of the Supreme Court of the District or of any justice thereof. These difficulties arise mainly when upon such a special appeal this court affirms the order appealed from, and such difficulties may be reduced to a minimum, if not entirely obviated, by dismissing the appeal when the court does not see its way clear to reverse the order which, in the first instance, it has undertaken to review in advance of a final determination of the case in the court below. If, for instance, when the first special appeal in this case had been heard, the court, instead of affirming the order appealed from, which rendered necessary a full discussion of the merits of the case, had dismissed the appeal, the court below would have had the undoubted right to allow the amendments and exercise its other discretionary powers as though the case had not been to the Court of Appeals at all. In that event the case would have come here on appeal from a final decree, and thus would not have been hampered by any previous piecemeal consideration of the case. With deference we submit that the course suggested should be pursued now. As soon as counsel for the defendant learned that the applica-

tion for the allowance of this special appeal had been made, they endeavored to have a hearing before the court took action, but were advised that the special appeal had then already been allowed. If they had had an opportunity to be heard, they would then have suggested to the court what they urge now — that it would be wise to allow the case to proceed in the court below under the order reopening the case to a final decree, and that when the case is brought here on appeal from such a final decree, the whole merits of the case will be presented here and the court will be enabled to do full justice between the parties upon a complete presentation by each of them of his entire case. The court can then as well as now give such considera-tion as may seem to it just to the proposition so strongly urged here, that the defendant was negligent in the presentation of its case under the original pleadings. It can then much better than now determine what weight, if any, shall be given to the fact that the application for leave to amend was not made un-til after the death of Pollard.

Such action would be analogous to that frequently taken by the Supreme Court of the United States in postponing till the hearing on the merits a motion to dismiss an appeal.

7. And, finally, the novel circumstances of this case, in its present situation, will enable the court, if it see fit, to define by a general rule the power of the court below to allow amend-ments after a case has been to the Court of Appeals on appeal from an interlocutory order.

But we respectfully submit that more harm than good would be likely to result from limiting in any way the power of a judge who is hearing a case in the first instance in the ex-ercise of his discretion in regard to amendments of the plead-ings or the introduction of additional evidence. We have not undertaken to examine particularly into the practice of the State courts in this regard, but incidentally decisions of those courts have come to our notice which indicate that this view of the matter is taken by them. See, for instance, *Henry* v. *Allen,* 147 N. Y. 346; *Keister* v. *Rankin,* 34 App. Div. (N. Y.) 288; *Cross* v. *Zellerbach,* 13 Cal. 633, 637; *Putnam* v. *Clark,* 35 N. J. Eq. 145; *Miller* v. *Cook,* 77 Va. 806. And

see Story's Eq. Pl., Sec. 418; 2 Daniell's Chan. Pr. 1579. We
have already seen that in several cases in the Circuit Courts
of Appeals those courts have declined to make an order allow-
ing application for leave to amend to be made to the court be-
low after an appeal, because the court below had full power in
that regard without any such order. *In re Marquand,* 57
Fed. Rep. 189; *Montana Ore Purchasing Company* v. *Bos-
ton, etc., Mining Company,* 85 Fed. Rep. 867–869; *Vicks-
burg R. Co.* v. *Nichols,* 85 Fed. Rep. 869, 870.

*Mr. Earle* and *Mr. Gittings* in reply:

1. Whether or not special appeals should be allowed in all
cases it does not seem necessary to discuss at this time; the
sole point is, whether this is such a case as merits the attention
of the court, at this stage on appeal; and we submit that it
would be hard to conceive of a case that could be presented
which, to preserve the rights of the parties, requires more im-
mediate action. The appellant has expended nearly two years
in endeavoring to secure his rights and, after finally having
them adjudicated by this court, he is virtually held up by a
void order of the court below which attempts to place him in
the same position he occupied prior to the original hearing of
his case. If this order appealed from is null and void, as we
most strenuously contend that it is, why should appellant's
rights be withheld from him until the appellee has time to
offer evidence which is clearly immaterial and irrelevant?

The proposition that, if this case had been dismissed when
brought here by appellee the first time, the court below would
have had the undoubted right to allow amendments in its dis-
cretion as though the case had never been to this court at all,
it is submitted is unsound. This motion was filed by appellee
in the court below, after ten terms of the court had passed,
subsequent to the rendering of the decree. See Equity Rule
88 of the Supreme Court of the District of Columbia, provid-
ing that " No rehearing shall be granted after the term at
which the final decree of the court shall have been entered and
recorded if an appeal lies to the Court of Appeals. But if no

appeal lies, the petition may be admitted at any time before
the end of the next term of the court in the discretion of the
court."

2. Appellee's contention that the decree of January 1,
1900, is merely interlocutory, cannot have any bearing upon
the present appeal. The case was heard in this court upon its
merits, and so far as the merits between the parties are con-
cerned, we submit, it certainly has the same *force* and *effect* as
a final decree, and is *res adjudicata.*

3. Appellee's contention that because the decree was not
final, the court below had the power to entertain the motions
is clearly unsound, and we respectfully submit unsupported
by any authorities cited by it.

The motion in this case is not analogous to such as is con-
templated by section 954 of the Revised Statutes of the
United States, or Equity Rule 55 of the Supreme Court of
the District of Columbia.

Courts will not allow amendments unless the parties will
thereby be placed *in statu quo;* the following authorities are
submitted: *Smallwood* v. *Lewin,* 13 N. J. Eq. 123; *McDou-
gal* v. *Purrier,* 4 Russell (Eng. Chan. Rep.) 486.

4. The statement that the question of jurisdiction was first
raised in this court, we submit is erroneous; but even if this
was true, it would not give the Supreme Court of the District
of Columbia jurisdiction to vacate or suspend the operation
of the decree of this court. It is a well-settled principle of
law that where a question of jurisdiction goes to the subject-
matter, the parties cannot, by submission, clothe the court
with a power that belongs to another tribunal. The rule laid
down in the following cases, namely, *Raynes* v. *Dumont,* 130
U. S. 354–395; *Brown* v. *Iron Company,* 134 U. S. 530;
*Roach* v. *Hurlings,* 16 Pet. 321, is to the effect that, where
the subject-matter belongs to the class over which a court of
equity has jurisdiction, and the objection that there is an ade-
quate remedy at law is not made until a hearing in the ap-
pellate tribunal, it comes too late. But that is an entirely
different case from this. The court below was without ju-
risdiction to entertain appellee's motion; the United States

Supreme Court in the following cases clearly settles this contention: *In re Potts,* 166 U. S. 266; *Southard* v. *Russell,* 16 How. 547; *Durant* v. *Essex Co.,* 101 U. S. 556. The right of an appellate court to give the court below such authority, in its decree, or mandate, we do not question; but unquestionably this right must be confined to some definite limits, and we respectfully submit that a motion coming six months after a decree has been made should not be entertained, and under the rules of the court below, heretofore cited, the court would be without authority to consider it.

Mr. Justice MORRIS delivered the opinion of the Court:

Two questions are raised by the assignments of error: (1) Whether the adjudication of this court on the former interlocutory appeal is so far conclusive and binding on the lower court as to preclude the reopening of the cause upon any ground or for any cause whatever; (2) Whether, if such adjudication does not preclude the reopening of the cause, the action of the court below was a proper exercise of its discretion in the premises. Of course, if the first of these two questions is to be answered in the affirmative, the second will not require consideration.

We understand it to be conceded, and upon principle and authority it must be conceded, that, after a final decree affirmed on appeal, with a remand of the cause to the lower tribunal for such proceedings as may be necessary or proper to carry such decree into effect, the lower court is without jurisdiction to do anything in the cause except such proceedings as are contemplated in the mandate which remands the cause. The litigation has become *res judicata,* and it is no longer competent for the lower court to reopen it, for the purpose of amendment of the pleadings, introduction of new testimony, or for any other purpose. The authorities are believed to be unanimous on this point. We need only refer to the decisions of the Supreme Court of the United States in regard to it. *Stewart* v. *Salamon,* 97 U. S. 361; *Humphrey* v. *Baker,* 103 U. S. 736; *Southard* v. *Russell,* 16 How. 547;

*Smale* v. *Mitchell,* 143 U. S. 99; *In re Washington & George-town RR. Co.,* 140 U. S. 91; *Hickman* v. *Fort Scott,* 141 U. S. 415.

In the case of *Stewart* v. *Salamon,* 97 U. S. 361, the Supreme Court of the United States, by Mr. Chief Justice Waite, said:

" This is an appeal from a decree entered upon our mandate. No complaint is made as to its form, and it seems to be in all respects according to our directions. The effort of the appellant was to open the case below, and to obtain leave to file new pleadings, introducing new defenses. This he could not do. The rights of the parties in the subject-matter of the suit were finally determined upon the original appeal, and all that remained for the Circuit Court to do was to enter a decree in accordance with our instructions, and carry it into effect. If, in the progress of the execution of the decree, after its entry, either party is aggrieved, he may appeal from the final decree in that behalf; but such an appeal will bring up for re-examination only the proceedings subsequent to the mandate."

It is likewise settled law, that, when the decree of a lower court has been affirmed on appeal, or when a decree has been entered in the lower court in conformity with the mandate of an appellate tribunal, a bill of review cannot be filed in the lower court without the permission of the appellate tribunal. The application for leave to file is to be made to the appellate court. *Purcell* v. *Coleman & Miner,* 4 Wall. 510; *Rubber Co.* v. *Goodyear,* 9 Wall. 805; *Savings Bank* v. *Taylor,* 53 Fed. Rep. 854; *Southard* v. *Russell,* 16 How. 547; *Gaines* v. *Rugg,* 148 U. S. 228; *In re Potts,* 166 U. S. 263, 267; Story's Eq. Pl., Sec. 408.

But the question here is, how far the rule that a lower court may not reopen a cause after the affirmance of a final decree by an appellate court, or after the entry of a final decree in pursuance of the mandate of an appellate court, is applicable to the matter of interlocutory appeals, such as are authorized under our present law. And this question, as it is a novel one in this jurisdiction and likely to recur at any time, it is im--

portant to settle at this time as far as it is possible for us to do so.

The allowance of appeals from interlocutory orders or decrees is not a new thing in the law.    It was common enough in the former English Chancery practice, in which appeals were frequent from the Lord Chancellor to the House of Lords from interlocutory orders appearing to affect the merits of the cause (Daniell's Chan. Prac., p. 1634), and in which the reason given for this exercise of appellate power was " that courts of equity often decide the merits of the case in intermediate orders, and the permitting of an appeal in the early stage of the proceedings frequently saves the expense of further prosecuting the suit."    This right of appeal, however, was confined to equity, inasmuch as in the nature of things there could not well be at common law any such absolute determination of right by interlocutory order.    In our American Federal practice, and in the judicial practice of most of the States of our Union, in which the subject has generally been regulated by statute, appellate jurisdiction is usually restricted to the review of final judgments and decrees, and the English Chancery practice does not usually obtain.    As between the general term and the special terms of the Supreme Court of the District of Columbia, as we all know, there was a power of review by the former of orders made by the latter which " involved the merits " of the action, the indefiniteness of which was the cause of great difficulty and inconvenience.    The statute creating this court strove to be more specific; but at the same time it is broader and wider than any previous enactment or any previous practice, since it authorizes the allowance of appeals from any orders whatever, either at common law or in equity, and in criminal as well as civil cases, wherever it seems to this court upon petition filed for the purpose to be in the interest of justice to allow such appeals.

The exercise of this appellate power is not without difficulty.    While it should be liberally and freely admitted in order to subserve the beneficent purpose for which the statute was enacted, yet undoubtedly the matter of the allowance of

interlocutory appeals should be carefully guarded, so as that it should not have the effect of embarrassing the administration of justice instead of facilitating it.    The case before us is a fair illustration of the possibilities of inconvenience that may result from such appeals; for this is the second interlocutory appeal, and it is almost the natural result of the first, and there is probability of at least two further appeals.   Now, the multiplication of appeals is not in the interest of justice, and cannot subserve any good purpose.   And we may add here that, in all cases in which this court is placed in the position of a merely intermediate appellate tribunal, it is greatly to be questioned whether the allowance of interlocutory appeals does not tend to complicate and unduly prolong the litigation.

In the allowance of appeals, where the allowance is in the discretion of this court, we are bound by the limitation that it must appear to be in the interest of justice that the appeal should be allowed.   It must, therefore, determine something, and the determination must have the effect of finality so far as it is possible that there should be finality at such stage of the proceedings.   If it were open to the court below to disregard the decision of the appellate tribunal upon such appeal, or to go behind it and reopen the cause, or to treat an interlocutory order affirmed upon appeal or directed to be entered by the appellate court as one of its own orders which it might vacate at its pleasure, this right of appeal would become a mere mockery of justice and would wholly fail to accomplish the purpose for which it was intended by the legislative authority.   In appealing to this court parties are to be presumed to have exhausted their remedy in the court below upon the subject-matter of appeal.   That, after their defeat upon the appeal, they should be permitted by the court below to go behind the appellate decision and bring forward other defenses which they had all the time but did not choose to present, would be an anomaly in the law.

We must hold that, in the case of interlocutory appeals, equally as in the case of appeals from final judgments and decrees, the decision of the appellate tribunal becomes the law

of the cause, final and irrevocable, upon all the questions involved or that might have properly been brought forward in such interlocutory decision, save only that the appellate tribunal itself, upon a proper showing, may revoke or modify its decision, or allow the cause to be reopened; and save, also, that, upon final hearing, the court below may not necessarily be bound in all cases by such interlocutory decision of the appellate court. If, for example, an injunction *pendente lite* is allowed by the lower court, and the order for its allowance is affirmed by this court upon appeal, it is not competent for the lower court thereafter during the pendency of the suit to disturb such injunction; but this would not preclude the court, upon final hearing, from dissolving the injunction and dismissing the bill of complaint, for then a new condition may be presented very different from that which appeared when the injunction was granted in the first instance.

But that a cause may be reopened, under proper conditions, at any stage of the proceedings, is familiar law. A motion for a new trial after verdict at common law is of daily occurrence. When such motion is based upon newly-discovered evidence of a substantial character, which with reasonable diligence could not have been procured before, it is almost a matter of course to reopen a cause. It is a provision of our statute that even a final judgment may be vacated at any time for fraud, surprise, or irregularity in its procurement. A bill of review in equity based upon newly-discovered evidence is a well-known proceeding. If, therefore, a cause may be reopened upon sufficient grounds even after final judgment or decree, it is certainly proper that, during its pendency and before such final judgment or decree, the power to reopen it, to amend pleadings, to admit new testimony, and in general so to reform the cause as the interests of justice may require, should remain unimpaired. But the same principle that provides that, when a judgment or decree has been affirmed on appeal, or has been entered in pursuance of the mandate of an appellate court, such judgment or decree should not be in any manner interfered with, except with the permission of the appellate tribunal, requires also that only by the per-

mission of the appellate tribunal may interlocutory orders so affirmed or entered be thereafter vacated.  In both cases alike the judgment, order, or decree sought to be vacated has become the act of the appellate court, and should not be disturbed without the action or permission of the appellate court.

We have searched in vain in the English Chancery Reports for any case in which a different course has been pursued, or where a lower court has attempted to reopen a cause in derogation of the ruling of an appellate tribunal; nor has our attention been directed to any adjudication in this country wherein there has been any different procedure.

From what we have said, it follows necessarily, in our opinion, that the Supreme Court of the District was without authority to make the order for the reopening of this cause from which the present appeal has been allowed and prosecuted.

But it is suggested in argument on behalf of the appellee, on whose motion the order in question was made, that, upon the showing made, this court may now give leave for the reopening of the cause, and permit or authorize the court below to proceed therewith upon such leave.  This would be virtually to sanction what the court has done without authority, and to dispense with the necessity of application to this court in the first instance.  But assuming that, for the saving of time and trouble, the suggestion may be taken as the equivalent of a formal application to this court, we are led to a consideration of the sufficiency of the showing made by the appellee.

As already stated, the appellee has applied for the reopening of the cause, and for permission to amend its answer and to introduce new testimony; and two grounds are stated for this application: (1) That there was fraudulent concealment by the appellant Farrow from the appellee of the existence of a patent, known as the Stover and Hance patent, which is assumed to dominate the invention of the appellant, and in fact to preclude him from the merit of being an original inventor; (2) that, until the rendition of the decision of this court on the former appeal, which was the appeal of the defendant now seeking to reopen the cause, the appellee was

under a misapprehension as to the nature and character of the suit and of the complainant's claim. In support of its application, the appellee filed in the court below numerous letters and three several affidavits; and these we also may here consider.

We fail to find in the showing made any sufficient evidence, or indeed any evidence whatever, of fraudulent concealment by the complainant in the cause. It is stated that the complainant represented himself to be the original inventor of the device purchased from him by the appellee, when in fact he was not such inventor. He represented the same thing to the Patent Office in his application for a patent; and we fail to see that there was anything fraudulent in the representation. All applicants for patents do that, and are required so to do; and it is no evidence of fraud that anticipation of the invention might be developed in the course of the proceedings. There was only an application pending. The record of the present case, and the correspondence now for the first time introduced by the appellee, show quite conclusively that the president of the defendant company, who made the contract with the complainant which is the basis of the suit, was as eager to purchase the device as the complainant was to sell. He was evidently familiar with the patent law, and knew precisely what contingencies might arise and what risks he took, and he took the risks knowingly and deliberately. He took the risk, which was specifically pointed out, that there might be a declaration of interference with other parties, and that in such interference the complainant, and the defendant as the assignee of the complainant, might be defeated.

But this whole question of the originality of the invention by the complainant, which enters into the consideration for the contract, has already been litigated. It is not new. It is set up in the defendant's answer to the bill of complaint; and we fail to see wherein it acquires any additional force by reiteration in the application for the reopening of the cause.

The main specification of fraudulent concealment, how-

ever, is the allegation that, at the time the verbal contract between the parties was entered into which subsequently was embodied in the written agreement on which the litigation is based, the complainant had knowledge of the patent designated as the Stover and Hance patent, already mentioned, and even had a copy of it in his possession, and did not disclose it to the appellee. But an examination of the record shows very conclusively that he did disclose this patent to the attorney of the appellee charged with the making of an examination of the records of the Patent Office preliminary to the execution of the contract, that he delivered his copy of the patent to this attorney, and that the attorney actually examined the patent before the contract was executed; and that the contract was not executed until after full and satisfactory examination. Moreover, it is very clearly shown that, soon after the execution of the contract, the attorney of the defendant company sent to its president a copy of the Stover and Hance patent; so that the company had full knowledge of the patent at the time of the institution of the suit and, therefore, necessarily at the time when it made its answer to the bill of complaint. If there had been any fraudulent concealment of this patent by the appellee, then was the time to set it up. And yet neither in the appellee's answer to the bill of complaint, nor in the introduction of testimony, is there any reliance whatever on this patent, or on its alleged fraudulent concealment by the complainant, as a defense. It is too late to make any such defense now, even if it were well founded.

It is set forth, in the second place, as a reason for the reopening of the case, that, until the decision rendered by this court, the appellee company was under a misapprehension as to the nature and character of the complainant's claim. But this ground is wholly untenable. We fail to find any foundation whatever for it, either in the facts of the case or in law. It had the bill of complaint before it. It filed a sworn answer. It was represented by two or more attorneys. Its president and its attorney for the procurement of patents were examined as witnesses. The company had the most

ample opportunity to understand the case, and we see no reason to doubt that it did understand it.

In this connection there has been some intimation in argument, that the opinion of this court on the former appeal went beyond the order appealed from, and is broader in its conclusions. We fail to find anything in the opinion which warrants this argument. But, if there be in it anything of that character, it is a well-known rule of construction that the expressions contained in an opinion are to be construed with reference to the subject-matter under consideration. The order of the court below was specific. We expressly affirmed that order, and we remanded the cause for the taking of the account directed by the order. Our mandate did not go beyond that. The cause went back to the court below for the execution of its order affirmed by this court on appeal. The account to be taken is the same account that was directed in the first instance by the court below. There is no ground for misunderstanding in the matter. No more and no less is directed to be done than was directed by the court below in the order of reference made by it to the auditor.

It is our conclusion that the order of the Supreme Court of the District of Columbia of October 22, 1900, whereby it allowed the cause to be reopened, the defendant's answer to be amended, and further testimony to be taken, and from which the present appeal has been allowed, was made without authority of law, and that it should be *reversed, with costs; and that the cause should be remanded to that court, with directions to proceed with the audit heretofore directed to be had, and for such other proceedings according to law as may be just and proper. And it is so ordered.*

A motion for a rehearing was overruled.